PERRY, J.,
dissenting.
A seasoned criminal is being wrongly set free from a twenty-seven-year prison term because of a mistake. In brief, the district court below ruled that Stang must be immediately released because the trial court sentenced him to only a two-month term and that period has long since expired.[1] This ruling, however, is incorrect. At the sentencing hearing on March 30, 2005, the trial judge addressed Stang as follows:
Despite admitting to the violation of probation, I don’t believe that you’ve ever taken responsibility for this or that you have shown any remorse whatsoever, so while you admitted to it, you continued to blame shift and to um— insist that you’ve been framed and it’s some grand conspiracy, despite the fact that your criminal history stems back all the way to '74, involving crimes of dishonesty from shoplifting, non-sufficient funds, grand theft, and in fact, the history indicates that you have been arrested on approximately twenty-five separate occasions with crimes involving dishonesty. And yet you sit here today and show absolutely no remorse....
I think you’re a consummate con-man and unfortunately for you the time is up. I hereby sentence you ... for a total of twenty-seven years in the Department of Corrections tvith credit for 1,915 days.
Mr. Stang, I hope you learn your lesson and I wish you luck.
(Emphasis added.) Had the district court below reviewed the transcript of this hearing,[2] the court would have known that the judge most certainly did not sentence Stang to two months’ imprisonment. Not by a long shot.
Unfortunately, this Court feels powerless to stop this miscarriage of justice because this Court lacks jurisdiction. This Court says that the district court’s ruling does not conflict with any other rulings of Florida’s district courts or of this Court. I disagree. At a minimum, the present decision of the district court conflicts with this Court’s well-settled precedent governing the procedural bar that applies to habeas corpus petitions, as explained more fully below. But further, the decision of the *208 district court also violates basic notions of fair play and essential justice. The citizens of this state are entitled to receive reasonable protection under the law from seasoned criminals who have been duly tried and convicted and sentenced to lengthy prison terms. This Court is duty-bound under the law to protect all citizens of this state from injustice. The decision below surely conflicts with this Court’s vast body of case law in many respects, but if it truly does not, I respectfully ask, why not?
I. BACKGROUND
On January 14, 2000, Stang pled guilty to twenty-four criminal counts, including racketeering, grand theft, loan broker fraud, money laundering, and conspiracy to commit racketeering. He was sentenced on April 12, 2000, in the Fifteenth Circuit Court in Palm Beach County to five years’ imprisonment on fifteen counts, to run concurrently, and to three years’ probation on the remaining nine counts, also to run concurrently. He served his term of imprisonment and was released on probation on September 6, 2002. Less than a month later, he violated probation by committing another grand theft offense and by having in his possession a firearm. He was sentenced to a twenty-one-month term on the new charge. After he completed that sentence, the trial court on March 30, 2005, conducted a violation of probation (VOP) hearing on the remaining nine counts of the original sentence and resentenced him to twenty-seven years, with credit for 1915 days.
On April 21, 2005, Stang appealed the VOP judgment and sentence to the Fourth District Court of Appeal in West Palm Beach, raising a scoresheet issue and several other issues. While the appeal was pending, he was committed to the Florida Department of Corrections (DOC) on May 2, 2005. Then, on June 6, 2005, DOC faxed the trial court an inquiry, asking the trial court to clarify whether the 1915-day credit was to be applied to the total sentence, in which case Stang’s total prison time would be approximately twenty-two years, or whether it was to be applied to each of the nine counts, in which case Stang would be entitled to immediate release. The trial court responded on June 7, 2005, with a corrected sentencing order indicating that the 1915-day credit was to be applied to the total sentence. The Fourth District Court of Appeal subsequently affirmed the VOP judgment and sentence. Stang v. State, 937 So.2d 1170 (Fla. 4th DCA 2006).
Stang later filed four proceedings with respect to the 1915-day credit provision in the VOP sentence, in four different courts. First, he filed a motion under Florida Rule of Criminal Procedure 3.850 in 2007 in trial court, raising various postconviction issues including a claim that the “time served” portion of the sentence was incorrect. The trial court denied the motion as untimely. Stang appealed, and the Fourth District Court of Appeal reversed in part and remanded:
Warren Stang seeks appellate review of an order that denied his rule 3.850 motion as untimely. We reverse and remand in part. Within his fifth point, Stang takes issue with the “time served” provisions of his March 2005 sentence imposed following a plea to violations of probation. Stang’s claim is timely and should be considered on the merits to the extent his challenge is that the “jail time served” award is incorrect or contrary to the 2005 violation of probation plea. Any challenge to the Department of Corrections’ interpretation of the sentencing documents or the award of “credit for time previously served in prison” shall be presented through an administrative grievance.
*209 Stang v. State, 976 So.2d 656 (Fla. 4th DCA 2008). On remand, the trial court denied the “time served” claim on the merits, adopting the State’s position that Stang had submitted no authority to support his claim that the 1915-day credit was to be applied to each count, not to the total sentence. Stang did not appeal the decision.
Second, Stang filed a habeas corpus petition in 2007 in the Nineteenth Circuit Court in Okeechobee County, where he was detained. He claimed that he had not been properly credited with the “time served” award in the manner prescribed by the trial court. The Nineteenth Circuit Court dismissed the petition without prejudice based on Slang’s failure to exhaust administrative remedies. Third, Stang filed another habeas petition in 2008 in the Tenth Circuit Court in Hardee County, where he was then detained. He claimed that the 1915-day credit should have been applied to each count, not to the total sentence, and that he was entitled to immediate release. The Tenth Circuit Court denied the petition. And finally, Stang filed a certiorari petition in the Second District Court of Appeal in Lakeland seeking review of the order of the Tenth Circuit Court denying his habeas petition.
Because Stang was seeking immediate release, the Second District Court of Appeal treated the certiorari petition as a habeas petition. That court then relied on this Court’s decisions in Alachua Regional Juvenile Detention Center v. T.O., 684 So.2d 814 (Fla.1996), and Murray v. Regier, 872 So.2d 217 (Fla.2002),[3] and concluded that the trial court had erred in three respects in notifying DOC that the 1915-day credit was to be applied to the total sentence, not to each count: (i) the trial court had no jurisdiction to correct the sentence during the pendency of the direct appeal of the VOP judgment and sentence; (ii) the corrected sentence was entered in violation of Stang’s due process rights because he was given no notice of the correction and was not present when the sentence was corrected; and (iii) the corrected sentence violated double jeopardy principles because it rescinded jail credit that had already been awarded. Stang v. State, 24 So.3d 566, 569-70 (Fla. 2d DCA 2009). The Second District Court of Appeal ruled that Stang was entitled to immediate release. The State sought review.
II. THE VOP SENTENCING HEARING AND ORDER
The trial court held a lengthy VOP sentencing hearing on March 30, 2005, and addressed Stang directly and frankly as follows:
Despite admitting to the violation of probation, I don’t believe that you’ve ever taken responsibility for this or that you have shown any remorse whatsoever, so while you admitted to it, you continued to blame shift and to um— insist that you’ve been framed and it’s some grand conspiracy, despite the fact that your criminal history stems back all the way to '74, involving crimes of dishonesty from shoplifting, non-sufficient funds, grand theft, and in fact, the history indicates that you have been arrested on approximately twenty-five separate occasions with crimes involving dishonesty. And yet you sit here today and show absolutely no remorse. You continue to insist that this is some *210 grand conspiracy that some detective, who entered your life in 1990, some decade and a half after you began your criminal career of committing dishonest crimes, is responsible for your demise.
I think you’re a consummate conman and unfortunately for you the time is up. I hereby sentence you in case number 95-3736, I find you guilty of the violation of probation and I sentence [you] in counts 44, and 65, to five years in the Department of Corrections, to be served consecutively. To count 72, to which I sentence you to five years in the Department of Corrections. On counts 78 and 48, I sentence you to five years consecutive in the Department of Corrections. On counts 70, 77, and 81, I sentence you to five years consecutive and in count 75, I sentence you to two years consecutive for a total of twenty-seven years in the Department of Corrections with credit for 1,915 days.
Mr. Stang, I hope you learn your lesson and I wish you luck.
(Emphasis added.)
The trial court then took a brief recess and returned and, because the individual sentences did not add up to a total of twenty-seven years, clarified the sentence as follows:
All right. For clarification, my intent is to give the top of the guidelines without bumping a grid for twenty-seven years. So, you’re hereby sentenced to five years in the Department of Corrections on counts 44, and 65. Five years in the Department of Corrections on count 72, consecutive. Five years in the Department of Corrections on counts 78 and 48, consecutive. Five years on counts 70 and 77, consecutive. Five years on counts 81 consecutive. Two years consecutive on count 75, for a total of twenty-seven years in the Department of Corrections with 1,915 days credit.
(Emphasis added.)
Later that same day, the above oral pronouncement was transcribed onto a standardized two-page sentencing form, and the form was signed by the trial judge. On the first page of the form, the relevant blank was filled in with “1915” and the applicable box was checked off and a written notation was added (denoted below in quotations):
It is further ordered that the Defendant shall be allowed a total of 1915 days as credit for time incarcerated prior to imposition of this sentence. It is further ordered that the composite term of all sentences imposed for the counts specified in the order shall run
[x] consecutive to “each other for a total of 27 years.”
On the second page of the sentencing order, another box was checked off, and one blank was filled in with “1915” and another blank was left empty:
[x] it is further ordered that the defendant be allowed 1915 days time served between day of arrest as a violator following release from prison to the date of re-sentencing. The Department of Corrections shall apply original jail time credit and shall compute and apply credit for time served on case/count_(Offenses committed on or after October 1, 1989, but before January 1,1994.)
Because the above two pages were contradictory, DOC on June 6, 2005, faxed the trial court the following inquiry:
Inmate Stang was sentenced to the department’s custody March 30, 2005, upon revocation of probation to consecutive terms of 5 years and a consecutive 2 year term, for an overall twenty-seven *211 (27) years state prison in the aforementioned counts.
Based on the documentation attached in exhibit 1 [which is page 1 of the sentencing order], a total of 1,915 days credit was ordered on the overall 27 years. However, in exhibit 2 [which is page 2 of the sentencing order], the court is allowing 1,915 days “plus” the original county jail time and time served in the department’s custody from counts 1 thru 3, 8, 30, 33, 34, 37, 39, 42, 51, 56, 60, 62 and 64, in accordance with Tripp v. State. The original term of this case was 5 years, or 1,825 days. To award the credit as provided in exhibit 2 would result in a potential immediate release.
The department is requesting the Court to clarify within 3 working days as to (# 1) the Court’s intention of the 1,915 days to be applied as reflected in exhibit 1; or (# 2) in exhibit 2; and (# 3) is it the Court’s intention to apply 1,915 days as violation of probation credit, original county jail time of 706 days and time served in the department’s custody to each count.
It appears the 1,915 days is 729 days violation of probation credit, 706 days original county jail time, 317 days time served in the department’s custody and an additional 163 days jail credit. Thus, awarding the original county jail time and time served would duplicate credit.
Your earliest and immediate attention in this matter is greatly appreciated. (Emphasis added.) The trial court on June 7, 2005, faxed DOC a corrected copy of page two of the sentencing order. On the corrected copy, the box that had formerly been checked off was now left blank, and the line that had formerly contained “1915” was also left blank. In light of this corrected page, DOC concluded that Slang’s VOP sentence was twenty-seven years’ imprisonment, minus 1915 days credit, for a total sentence of approximately twenty-two years.
III. JURISDICTION
Stang contends, and the present majority opinion agrees, that this Court lacks jurisdiction to review the decision of the Second District Court of Appeal in Stang v. State, 24 So.3d 566 (Fla. 2d DCA 2009). I disagree. This Court has held in innumerable cases, in both published and unpublished decisions, that a prisoner cannot use habeas corpus to litigate or relitigate issues that could have been, should have been, or were raised on direct appeal or in prior postconviction proceedings. See, e.g., Denson v. State, 775 So.2d 288, 289 (Fla. 2000) (“[A]n extraordinary writ petition cannot be used to litigate or relitigate issues that were or could have been raised on direct appeal or in prior postconviction proceedings.”); Mills v. Dugger, 574 So.2d 63, 65 (Fla.1990) (“[H]abeas corpus is not to be used for obtaining additional appeals of issues which were raised, or should have been raised, on direct appeal or which were waived at trial or which could have, should have, or have been, raised in prior postconviction filings.”) (internal quotation marks omitted); White v. Dugger, 511 So.2d 554, 555 (Fla.1987) (“[HJabeas corpus is not a vehicle for obtaining additional appeals of issues which were raised, or should have been raised, on direct appeal or which were waived at trial or which could have, should have, or have been, raised in [prior postconviction] proceedings.”).
In the present case, according to the plain language of the decision under review, the Second District Court of Appeal violated this principle. In the opinion below, the district court stated that Stang first raised a court-based challenge to the corrected sentencing order in the rule 3.850 proceeding, which was denied on the *212 merits on April 18, 2008. At that point, he could have, should have, or did raise all justiciable issues with respect to that order. Nevertheless, despite the fact that Stang was given that opportunity, the Second District Court of Appeal stated that he was later given another opportunity to challenge the same corrected order anew, this time in a different court — the Tenth Circuit Court in Hardee County — in a ha-beas proceeding. And finally, the Second District Court of Appeal stated that Stang was given yet another opportunity to challenge the corrected order in yet another court-the Second District Court of Appeal itself-in yet another habeas proceeding, this time to review the Tenth Circuit Court’s habeas ruling. Thus, according to the plain language of the opinion, Stang, through the use of habeas corpus, was given three separate bites at the same corrected sentence “apple” in three different courts.
To the extent Stang claims that the corrected sentencing order was void because it was entered during the pendency of his direct appeal and the trial court lacked jurisdiction to enter it and that a claim of lack of jurisdiction can be raised at any time, Stang has overlooked the plain language of rule 3.850, which addresses such jurisdictional claims:
(a) Grounds for Motion. The following grounds may be claims for relief from judgment or release from custody by a person who has been tried and found guilty or has entered a plea of guilty or nolo contendere before a court established by the laws of Florida:
(1) The judgment was entered or sentence was imposed in violation of the Constitution or laws of the United States or the State of Florida.
(2) The court did not have jurisdiction to enter the judgment.
(3) The court did not have jurisdiction to impose the sentence.
(4) The sentence exceeded the maximum authorized by law.
(5) The plea was involuntary.
(6) The judgment or sentence is otherwise subject to collateral attack.
Fla. R.Crim. P. 3.850 (emphasis added). Rule 3.850 places a two-year time limit on the filing of such claims, see Fla. R.Crim. P. 3.850(b), and this time bar cannot be circumvented through the filing of an extraordinary writ. The decision of the Second District Court of Appeal, on its face, conflicts with Denson, Mills, and White, and countless other decisions of this Court addressing the procedural bar that applies to habeas proceedings.
IV. ANALYSIS
The legal issue presented in this case is a pure question of law, subject to de novo review. See State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001) (“If the ruling consists of a pure question of law, the ruling is subject to de novo review.”). As noted above, because Stang raised the corrected sentencing order as an issue in the rule 3.850 proceeding and because he either could have, should have, or did raise all justiciable issues related to that order at that time, his subsequent habeas claims challenging that same order were procedurally barred. Stang’s proper remedy following the denial of his rule 3.850 motion was to file a timely appeal in the Fourth District Court of Appeal, not to file multiple extraordinary writ petitions in various other courts throughout the state.
To the extent this procedural bar is subject to the “manifest injustice” exception, see State v. McBride, 848 So.2d 287, 291 (Fla.2003) (“This Court has long recognized that res judicata will not be invoked where it would defeat the ends of justice.”), the exception is inapplicable here. *213 The sentence that is set forth in the corrected order is consistent with the trial court’s oral pronouncement. As noted above, in both oral pronouncements at the March 30, 2005, sentencing hearing, the trial court’s language with respect to the issue of credit was virtually identical and unequivocal: “a total of twenty-seven years in the Department of Corrections with credit for 1,915 days,” and “a total of twenty-seven years in the Department of Corrections with 1,915 days credit.” This pronouncement matches the sentence that was set forth in the trial court’s corrected sentencing order. And even if, as the Second District Court below ruled, the corrected order was invalid and the initial sentencing order controlled, to the extent there was any discrepancy between that order and the oral pronouncement, the oral pronouncement controls in such situations, for the written order is merely a record of the oral pronouncement. See, e.g., Williams v. State, 957 So.2d 600 (Fla. 2007); Ashley v. State, 850 So.2d 1265 (Fla.2003); Justice v. State, 674 So.2d 123 (Fla.1996). No manifest injustice exists here — Stang is serving exactly the sentence that he was told he would serve.
I reiterate that a trial court, on its own motion, has inherent authority and retains continuing limited jurisdiction to correct purely clerical sentencing errors[4] at any point prior to completion of the sentence, with notice to the parties. See Boggs v. Wainwright, 223 So.2d 316, 317 (Fla.1969) (“[A] court of record may, even after the term has expired, correct clerical mistakes in its own judgments and records, nunc pro tunc, and [the fact] that such corrections generally relate back and take effect as of the date of the judgment, decree, order, writ, or other record so corrected, is well settled.”); D’Alessandro v. Tippins, 98 Fla. 853, 124 So. 455, 456 (1929) (“If the first sentence contained clerical ... errors, the judgment as entered may at any time be corrected so as to speak the truth of what was in fact done by the court.”); Drumwright v. State, 572 So.2d 1029, 1031 (Fla. 5th DCA 1991) (“Florida has long recognized a court’s inherent power to correct clerical errors.”); Carson v. State, 489 So.2d 1236, 1238 (Fla. 2d DCA 1986) (“A court may correct clerical mistakes in its own judgments and records, nunc pro tunc, even after the term of court has expired, and such corrections generally relate back and take effect as of the date of judgment.”); Perry v. State ex rel. Mills, 357 So.2d 425, 427 (Fla. 3d DCA 1978) (“Generally, a court of record may, even after its term has expired, correct clerical mistakes in its own judgments and records.”).
V. A FINAL POINT
Contrary to Stang’s assertion, the State did not drop the ball in its prosecution of this case at the postconviction level. First, the State did not participate in Stang’s first habeas proceeding, in the Nineteenth Circuit Court in Okeechobee County. Stang filed the petition against DOC, not the State, and the circuit court dismissed the petition based on DOC’s response showing that Stang had not exhausted his administrative remedies. Second, the State did not participate in Stang’s second habeas proceeding, in the Tenth Circuit Court in Hardee County. Although Stang filed the petition against the State, he served a copy of the petition on DOC rather than the State, and the court apparently denied the petition on its face, never requesting a response from the State. The court issued a brief order noting that Stang’s administrative claim had been ade *214 quately addressed by DOC and that his sentencing claim must be raised in a post-conviction motion filed in the sentencing court in Palm Beach County. Thus, on this record, it appears that the State did not even know that these first two habeas proceedings were taking place.
And third, in the subsequent review proceeding before the Second District Court of Appeal in Lakeland, although Stang filed the petition against the State, he again failed to serve a copy of the petition on the State. This time, however, the district court ordered the State to respond. At that point in the proceedings, the petition was styled as a petition for writ of certiorari, and the district court’s order stated: “Respondent shall serve a response to the petition for writ of certiorari within 20 days.” Based on that order, the State framed its response in conformity with the standard of review for certiorari proceedings — i.e., the State addressed the issue of whether the order under review departed from the essential requirements of law. The State argued that the Tenth Circuit Court’s order was correct, that Stang was pursuing the wrong remedy. Rather than seeking habeas relief, Stang should have raised his sentencing claim in a postconviction motion filed in the trial court. The State further pointed out that Stang could not use habeas corpus to raise an issue that he could have, should have or did raise in his prior rule 3.850 motion. Rather, Stang should have appealed the denial of that motion.
After the State filed its response, the Second District Court of Appeal changed the rules of the proceeding. Instead of reviewing Stang’s petition as a certiorari petition, the district court, on its own motion, treated the petition as yet another habeas petition and applied an entirely different standard of review.[5] Rather than determining whether the order under review departed from the essential requirements of law, the district court inquired into whether the trial court’s detention order was entered without jurisdiction and whether that order was void or illegal. In other words, rather than reviewing the Tenth Circuit Court’s order denying habe-as relief, the district court reviewed the Fifteenth Circuit Court’s sentencing order. The district court did this peremptorily, without asking for supplemental briefing and without having before it a complete record of the sentencing proceeding. In fact, the district court had before it only the sentencing documents that Stang himself had selectively filed in the district court along with his petition. On that basis alone, the Second District Court of Appeal answered the inquiry in the affirmative and ruled that Stang was entitled to immediate release.
On rehearing, the State pointed out that the district court had no basis for so ruling when the district court had before it an incomplete sentencing record. The State also pointed out that under rule 9.200(e), it was Stang’s duty as petitioner, not the *215 State’s, to ensure that all relevant portions of the record from the sentencing court were prepared and transmitted to the district court.[6] Presumably, the State was referring to the key sentencing document that was missing from the record — the transcript of the March 30, 2005, sentencing hearing. The district court summarily denied rehearing.
As a postscript, I note that this Court has supplemented the record on review with an official copy of the transcript of the sentencing hearing from the Fifteenth Circuit Court, and, as discussed above, that transcript shows plainly that it was the trial court’s intent that Stang should be imprisoned “for a total of twenty-seven years ... with credit for 1,915 days.” This resolves the clerical error conclusively in the State’s favor. The inquiry is ended. Thus, to the extent the Second District Court of Appeal ruled as it did without adequate briefing and without having before it a complete sentencing record, it was not the State’s fault, but its own.
VI. CONCLUSION
Because Stang raised the corrected sentencing order as an issue in his prior rule 3.850 proceeding and because he either could have, should have, or did raise all justiciable issues with respect to that order at that time, his subsequent habeas claims challenging the same order were proeedurally barred. The proper remedy following the denial of his rule 3.850 motion was to file a timely appeal in the Fourth District Court of Appeal, not to file multiple habeas corpus petitions in various other courts throughout the State. This Court has repeatedly held that the great writ is not a redundancy. Habeas corpus was never intended to serve as a means to gain additional appeals of issues that could have been, should have been, or were raised on direct appeal or in prior postconviction proceedings. As noted above, the decision of the Second District Court of Appeal directly conflicts with innumerable decisions of this Court addressing the procedural bar that applies to habeas corpus. I would not discharge review in this case but rather would retain review and quash the district court’s decision.
In conclusion, I note that because there is no showing on this record that the trial court in Palm Beach County notified the parties when it issued the corrected sentencing order, I would return this case to the trial court for entry of a properly noticed order consistent with the oral pronouncement.
I respectfully dissent.

. See Stang v. State, 24 So.3d 566, 570-71 (Fla. 2d DCA 2009) (“Under these circumstances, Stang can be legally held pursuant only to the original sentence imposed on March 30, 2005_ Since the sentence imposed on March 30, 2005, expired years ago, Stang is entitled to immediate release."); see also id. at 567-68 ("The practical effect of this sentencing order was that Stang would serve about two months in prison and then be released with no further supervision.").

. As explained more fully below, the district court did not request adequate briefing in this case or request or review the trial court's sentencing record. Instead, the district court based its ruling solely on sentencing documents that Stang himself selectively filed along with his petition.

. I note that both Alachua Regional Juvenile Detention Center v. T.O., 684 So.2d 814 (Fla. 1996), and Murray v. Regier, 872 So.2d 217 (Fla.2002), were pretrial habeas corpus cases, and to the extent the Second District Court of Appeal relied on those cases to resolve this posttrial habeas corpus case, the district court decision conflicts with this Court’s precedent.

. Cf. Ashley v. State, 850 So.2d 1265, 1268 n. 3 (Fla.2003) (addressing the meaning of the term "scrivener’s error” in the context of rule 3.800(b) motions).

. I note that, as a general rule, a plenary appeal, not another habeas corpus petition, is the proper mechanism for seeking review of an order granting or denying a petition for writ of habeas corpus. See generally Philip J. Padovano, Florida Appellate Practice § 29.6 (2009). That is, unless habeas corpus was employed in the circuit court as an appellate remedy to review a quasi-judicial decision of an administrative tribunal, in which case review in the district court is by certiorari. Id. I further note that once a party seeks relief in a particular court by means of a petition for an extraordinary writ, the party has picked his or her forum and is not entitled to a second or third opportunity for the same relief by the same writ in a different court. See Jenkins v. Wainwright, 322 So.2d 477 (Fla. 1975). In this respect, the present district court opinion conflicts with this Court’s precedent.

. Florida Rule of Appellate Procedure 9.200 provides as follows in relevant part:
(e) Duties of Appellant or Petitioner. The burden to ensure that the record is prepared and transmitted in accordance with these rules shall be on the petitioner or appellant. Any party may enforce the provisions of this rule by motion.
Fla. R.App. P. 9.200(e) (emphasis added).